IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| JESUS ENRIQUE MOTA MARIN,<br><br>*Petitioner*,<br><br>v.<br><br>WARDEN, IAH SECURE ADULT DETENTION FACILITY; GABRIEL MARTINEZ, in his Official Capacity as Acting Field Office Director, Houston Field Office, United States Immigration and Customs Enforcement; TODD M. LYONS, in his Official Capacity as Director, United States Immigration and Customs Enforcement; KRISTI NOEM, in her Official Capacity as Secretary of Homeland Security; and PAMELA JO BONDI, in her Official Capacity as United States Attorney General,<br><br>*Respondents*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 9:26-CV-00130<br>JUDGE MICHAEL J. TRUNCALE |

## ORDER DENYING PETITION FOR HABEAS CORPUS

Before the Court is Petitioner Jesus Enrique Mota Marin (Mota)'s Petition for Writ of Habeas Corpus (the Petition). [Dkt. 1]. For the following reasons, the Petition is **DENIED**.

### I. BACKGROUND

#### a. Mota's Personal History

Mota is a Venezuelan national who entered the United States in 2022, when he was sixteen years old. [Dkt. 1 at ¶ 37]. Because he entered the country as an unaccompanied minor, Mota was placed in the custody of the Office of Refugee Resettlement (ORR) upon his arrival. *Id.* He remained in ORR custody until September 2023, when he was released into the care of his aunt. *Id.* On February 11, 2026, United States Immigration and Customs Enforcement detained Mota and initiated removal proceedings against him. *Id.* at ¶ 11.

1

### b. Temporary Protected Status for Venezuelan Nationals

In 2024, Mota applied for and received Temporary Protected Status (TPS), which afforded him temporary protection from detention and deportation. [Dkt. 7 at 2]. However, on February 3, 2025, newly appointed Secretary of Homeland Security Kristi Noem terminated TPS for all Venezuelan nationals, thereby exposing Mota to potential detention and removal from the United States. 90 Fed. Reg. 8805 (Feb. 3, 2025). In March 2025, a judge in the Northern District of California issued an order holding Secretary Noem's termination of TPS unlawful and postponing the termination's effective date. *Noem v. Nat'l TPS All.*, 773 F. Supp.3d 807 (N.D. Cal. 2025). The Supreme Court subsequently stayed the district court's order, effectively re-instating the TPS termination. *See Noem v. Nat'l TPS All.*, 145 S.Ct. 2728, 2729 (2025). Mota nevertheless applied to have his TPS renewed on May 2, 2025. [Dkt. 1 at ¶ 18]. The Ninth Circuit affirmed the district court's order on August 29, 2025, prompting another stay from the Supreme Court. *See Noem v. Nat'l TPS All.*, 146 S.Ct. 23, 24 (2025). On February 19, 2026, Mota brought a habeas corpus petition, claiming that his detention violates 8 U.S.C. § 1254a—the TPS statute— as well as 8 U.S.C. § 1232(c)(2)(B) and the Fifth Amendment to the United States Constitution. [Dkt. 1].

## II. LEGAL STANDARD

Habeas petitions under 28 U.S.C. § 2241 serve the "sole function" of challenging the legal basis for the petitioner's detention. *Pierre v. U.S.*, 525 F.2d 933, 935–36 (5th Cir. 1976). Section 2241 entitles five classes of prisoners to habeas relief, including prisoners held "in violation of the Constitution or laws, or treaties of the United States." 28 U.S.C. § 2241(c)(3). In a habeas proceeding, the petitioner bears the burden of proof and must demonstrate by a preponderance of the evidence that he is being held unlawfully. *Villanueva v. Tate*, No. H-25-3364, 2025 WL 2774610 at *4 (S.D. Tex. Sep. 26, 2025).

### III. DISCUSSION

#### A. Temporary Protected Status

8 U.S.C. § 1254a(d)(4) provides that "an alien provided temporary protected status . . . shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States." 8 U.S.C. § 1254a(d)(4) (2018). According to Mota, section 1254a(d)(4) creates an exception to 8 U.S.C. § 1225(b)(2)(A), which provides for the mandatory detention of aliens who enter the United States without inspection. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 505–06 (5th Cir. 2026). Even if Mota's reading is correct, section 1254a(d)(4) does not apply to him because he no longer holds temporary protected status. Although a judge in the Eastern District of California entered an order vacating Secretary Noem's termination of TPS for Venezuelans, the Supreme Court stayed the effects of that order and the appellate court decision affirming it. *See Nat'l TPS All.*, 146 S.Ct. at 24. Hence, the TPS termination remains in effect and section 1254a(d)(4) does not shield Mota from detention.

#### B. Unaccompanied Alien Child

8 U.S.C. § 1232(c)(2)(B) provides that if an unaccompanied alien child "reaches 18 years of age and is *transferred to* the custody of the Secretary of Homeland Security, the Secretary shall *consider* placement in the least restrictive setting available . . . "  8 U.S.C. § 1232(c)(2)(B) (2018) (emphasis added). Mota argues that, because he arrived as an unaccompanied minor, is now over the age of eighteen, and is in ICE custody, he must be placed in the "least restrictive setting available." *See* [Dkt. 1 at ¶ 47]. He further argues that detention cannot be the "least restrictive setting available," since less restrictive alternatives like bond exist. *See id.*

Mota's reading of section 1232(c)(2)(B) is untenable on multiple levels. First, the statute applies only to unaccompanied alien minors who are "transferred to" the Secretary of Homeland Security's custody upon turning eighteen. § 1232(c)(2)(B). Mota's situation is distinct, as he was not "transferred to" Homeland Security's custody by another agency. *See* [Dkt. 1 at ¶ 37]. Instead, Mota

entered DHS custody by way of arrest after spending the previous two years in civilian life. *See id.* at

¶¶ 11, 37. As a result, section 1232(c)(2)(B) does not apply to him in any capacity.

Second, even if section 1232(c)(2)(B) did apply to Mota, the statute only requires the Secretary

of Homeland Security to "consider" placement in the least restrictive setting available. § 1232(c)(2)(B).

It does not give unaccompanied alien children an unqualified right to be placed in the least restrictive

setting available once they turn eighteen, as Mota seems to suggest. Hence, Mota's detention would

not violate section 1232(c)(2)(B) even if the statute applied to him.[1]

## IV. CONCLUSION

It is therefore **ORDERED** that Mota's Petition for Writ of Habeas Corpus [Dkt. 1] is hereby

**DENIED**. All pending motions are hereby **DENIED AS MOOT**. This constitutes a **FINAL**

**JUDGMENT** and the Clerk is **INSTRUCTED** to close this matter.

**SIGNED this 19th day of May, 2026.**

Michael J. Truncale
United States District Judge

---

[1] Because Mota's Fifth Amendment arguments rest on the mistaken assumption that the TPS statute, section 1232(c)(2)(B), or both, preclude his detention, the Court need not address them.

4